PEATROSS, J.
_JjThe defendant, Stanley McDonald, appeals from a trial court judgment terminating his parental rights to his two children, J.W.M. and L.J.M. For the reasons stated herein, we affirm.

*1220
FACTS

Mr. McDonald is the father of J.W.M. (age 8) and L.J.M. (age 4). The mother of the children, Lisa Marie Wyatt, died of cancer on November 25, 2006. After Ms. Wyatt’s death, Mr. McDonald maintained custody of the two children. Mr. McDonald is also the father of S.M., a child born of Mr. McDonald and Briana Endi-cott in November 2003. Due to valid allegations of abuse that Mr. McDonald abused another child of Ms. Endicott’s (not S.M.), S.M. was removed from the home several times. The Department of Social Services (“the Department”) assigned Mr. McDonald a case plan for reunification with S.M.; but, because he did not complete the case plan or visit the child and was subsequently arrested in July 2007, his parental rights to S.M. were terminated in January 2008 (Docket No. 3,476, 42nd J.D.C.).
Mr. McDonald also has a lengthy criminal history beginning in 1988 and lasting through the date of his most recent arrest and incarceration in mid-2007. The Department became involved in this case with respect to J.W.M. and L.J.M. in July 2007 when it learned from the DeSoto Parish Sheriffs Department that Mr. McDonald and his girlfriend, Jennifer Gin-gles, were arrested in Caddo Parish for Possession with Intent to Distribute Methamphetamine and Distribution of Methamphetamine (“Meth”). Once he was arrested, Mr. McDonald told police officers that his |2children were with Ms. Gingles’ daughter, L.H. (age 17), at a residence in Gloster, Louisiana. Police obtained permission from Mr. McDonald to search the residence and did so, accompanied by the Department. Upon searching Mr. McDonald’s Gloster residence, police discovered scales used for weighing Meth, a ledger indicating the sale of Meth and several “baggies” containing Meth residue.
When Ms. Gingles’ 17-year-old daughter, L.M., was questioned by officials, she indicated that she had witnessed her mother undergoing extreme and rapid weight loss, staying awake for several days in a row and then “crashing.” L.M. further indicated that she had seen several unknown people come to the house, go into the back room with Mr. McDonald for a short period of time and then leave quickly. Eight-year-old J.W.M. was also questioned and indicated that he had seen Mr. McDonald’s girlfriend, Ms. Gingles, “smoke ice.”
After Mr. McDonald’s arrest in July 2007, the Department obtained a valid court order to have J.W.M. and L.J.M. removed from Mr. McDonald’s residence. The children were adjudicated children in need of care in October 2007. Then in August 2008, the Department filed a Petition for Termination of Parental Rights. The trial court terminated Mr. McDonald’s parental rights to J.W.M. and L.J.M. in October 2008. Mr. McDonald’s rights were terminated pursuant to the following three sections of the Louisiana Children’s Code: (1) 1015(3)(k) rights to other children previously terminated; (2) 1015(4)(b) abandonment; and (3) 1015(5) failure to complete a case plan or show significant improvement.
IsMr. McDonald now appeals.

DISCUSSION

Children whose parents are unwilling or unable to provide adequate safety and care to meet them needs are protected by Title X of the Louisiana Children’s Code which provides a judicial process for the termination of parental rights and for certifying the child for adoption. La. Ch. C. art. 1001; State ex rel. A.R.H. v. Hines, 35,800 (La.App. 2d Cir.2/27/02), 810 So.2d 1166.
In termination proceedings, courts must balance the two private inter *1221 ests of the child and the parents. State ex rel. A.R.H. v. Hines, supra. It is well established that a parent has a constitutionally protected liberty interest in establishing and maintaining a meaningful relationship with his or her children. State in Interest of A.C., 93-1125 (La.1/27/94); 643 So.2d 719; State ex rel. B.H. v. A.H., 42,864 (La.App. 2d Cir.10/24/07), 968 So.2d 881. The child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing stable, long-term relationships found in a home with proper parental care. State ex rel. G.J.L., 00-3278 (La.6/29/01), 791 So.2d 80; State ex rel. A.R.H. v. Hines, supra.
 In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent. State ex rel. G.J.L., supra; State ex rel. C.M.M. v. T.P.M., 42,238 (La.App. 2d Cir.5/9/07), 957 So.2d 330; State ex rel. M.H. v. K.W.H., 40,332 (La.App. 2d Cir.9/23/05), 912 So.2d 88; State ex rel. A.R.H. v. Hines, supra. In all ^proceedings, when a ground justifying termination of parental rights is proven, the primary concern is to secure the best interest of the child. State ex rel. G.J.L., supra; State ex rel. A.R.H. v. Hines, supra. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. State ex rel. A.R.H. v. Hines, supra; State ex rel. R.C. v. Everett, 35,749 (La.App. 2d Cir.1/23/02), 805 So.2d 1205.
 Termination of parental rights is a severe and final action, so the state must satisfy an onerous burden of proof in order to terminate these rights. State ex rel. B.H. v. AH., supra. The state bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence. La. Ch. C. art. 1035(A); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); State ex rel. C.M.M. v. T.P.M., supra. Although there are several statutory grounds for involuntary termination of parental rights set forth in La. Ch. C. art. 1015, only one ground need be established. State ex rel. S.N.W v. Mitchell, 01-2128 (La.11/28/01), 800 So.2d 809; State ex rel. B.H. v. AH., supra.
Pursuant to the clear and convincing proof standard, the state must show that the parents’ failure to comply with the enumerated condition is highly probable. State ex rel. B.H. v. A.H., supra. Even upon finding that the state has met its evidentiary burden, a court still should not terminate parental rights unless it determines that to do so is in the child’s best interests. La. Ch. C. art. 1039; State ex rel. C.M.M. v. T.P.M., supra; State 5ex rel. C.E.C. v. D.M.D.B., 40,409 (La.App. 2d Cir.9/28/05), 912 So.2d 418.
In termination of parental rights cases, the trial court’s factual findings will not be set aside in the absence of manifest error. State ex rel. B.H. v. A.H., supra; State, Dept. of Social Services ex rel. D.L.F. v. Phillips, 34,645 (La.App. 2d Cir.4/4/01), 785 So.2d 155; State in Interest of S.D. v. Moore, 31,192 (La.App. 2d Cir.8/19/98), 717 So.2d 265; State in Interest of K.L.B. v. Biggs, 29,512 (La.App. 2d Cir.2/28/97), 690 So.2d 965.
In order to terminate parental rights, the court must find that the state has established at least one of the statutory grounds contained in La. Ch. C. art. 1015. The statute provides in pertinent part:
The grounds for termination of parental rights are:
(3) Misconduct of the parent toward this child or any other child of the parent or *1222 any other child in his household which constitutes extreme abuse, cruel and inhuman treatment, or grossly negligent behavior below a reasonable standard of human decency, including but not limited to the conviction, commission, aiding or abetting, attempting, conspiring, or soliciting to commit any of the following:
(k) The parent’s parental rights to one or more of the child’s siblings have been terminated due to neglect or abuse and prior attempts to rehabilitate the parent have been unsuccessful.
(4) Abandonment of the child by placing him in the physical custody of a nonpar-ent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months.
1 B(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
In Mr. McDonald’s sole assignment of error, he argues that the State failed to prove by clear and convincing evidence that he did not substantially comply with his case plan. Mr. McDonald further argues in this assignment that the State failed to prove that there is no reasonable expectation of reformation on his part in the foreseeable future. Mr. McDonald does not set forth an argument with regard to either of the two other grounds in the Children’s Code upon which the trial judge relied in terminating Mr. McDonald’s parental rights, ie., La. Ch. C. art. 1015(3)(k) rights to other children previously terminated and La. Ch. C. art. 1015(4)(b) abandonment. Accordingly, we will limit our discussion to Mr. McDonald’s argument that the trial judge erred with respect to his ruling on the grounds of La. Ch. C. art. 1015(5): failure to complete a case plan or show significant improvement.
Mr. McDonald claims that, once incarcerated, he immediately enrolled in the programs department in order to complete his classes in substance abuse and anger management, but that he was placed on a waiting |7list for the classes that would fulfill his case plan requirements. According to Mr. McDonald, his outlook has changed and he has “strive[n] to correct the problems that necessitated the children’s removal.” Additionally, Mr. McDonald asserts that he has shown improvement that is significant enough to prevent the termination of his parental rights; specifically, he has become more responsible, stable and self-reliant.
The Department counters that the judgment of the trial court terminating Mr. McDonald’s parental rights should be upheld because clear and convincing evidence was presented at trial that Mr. McDonald *1223 failed to follow his case plan for reunification and that he showed no reasonable expectation of significant improvement in his condition or conduct in the near future. We agree.
The record reflects that the Department filed and the trial court approved case plans for reunification for Mr. McDonald which included parenting classes, anger management, domestic violence counseling and substance abuse counseling. Mr. McDonald, however, did not participate in any of these programs for the first 15 months he was incarcerated. Ms. Rebecca Burch, the Foster Care Case Manager assigned to Mr. McDonald’s case, testified at trial that Mr. McDonald did not sign up for any services listed in his case plan until after he had been incarcerated for nearly a year. Ms. Burch testified that, even though Mr. McDonald had been on the waiting list to attend the classes enumerated in his case plan since June 10, 2008, his children had been in state custody since July 26, 2007. Thus, Mr. McDonald waited almost an entire year after his initial | ^incarceration to sign up for the classes which would enable him to comply with his case plan. We find, therefore, that Mr. McDonald’s argument that the State failed to prove that he did not substantially comply with his case plan lacks merit.
Additionally, we agree with the Department that Mr. McDonald has shown no reasonable expectation of significant improvement in his condition or conduct in the near future. Given his lengthy criminal history, including his repeated arrests and incarcerations in Texas and Louisiana, his current delays and unwillingness to follow his case plan for reunification with his children and his previous failure to follow the case plan for reunification with S.M. resulting in the termination of his parental rights, Mr. McDonald has shown an established pattern of behavior which indicates that he is unwilling to provide an adequate permanent home for J.W.M. and L.J.M. Accordingly, we find that Mr. McDonald’s argument that the State failed to prove that there is no reasonable expectation of reformation on his part in the foreseeable future also lacks merit.

CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court terminating the parental rights of Defendant, Stanley McDonald, to his two children, J.W.M. and L.J.M. Costs of this appeal are assessed to Mr. McDonald.
AFFIRMED.